IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FELICE IMMORDINO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BUCKS COUNTY COMMUNITY | : | |
| COLLEGE, et al. | : | NO. 14-1736 |

OPINION

JACOB P. HART                                                                             DATE:   1/5/2015
UNITED STATES MAGISTRATE JUDGE

In this action, brought under the Civil Rights Act of 1964 (Title VII), 42 USC § § 2000e *et seq*., and the Pennsylvania Human Relations Act, plaintiff Felice Immordino maintains that she was terminated as an employee of Bucks County Community College ("BCCC") as a result of discrimination based on her sex, and in retaliation for her having filed a complaint of sexual discrimination with the EEOC.  Defendants have filed a motion for summary judgment, to which Immordino has replied.  Defendants have also filed a reply memorandum.  For the reasons set forth below, Defendants' motion for summary judgment will be denied.

I.      Factual and Procedural Background

Immordino was employed by BCCC as a custodian between 2002 and her dismissal in January, 2013.  Communications from BCCC Office of Human Resources, attached to Defendants' Motion as Exhibits 2 and 107.  Around 2009, Immordino began acting as a shop steward, i.e., she was a union representative on behalf of union members in grievances or disciplinary procedures involving BCCC.  Deposition of Mark Grisi, attached to Immordino's Response as Exhibit D at 35-36; Deposition of Immordino, attached to Response as Exhibit FF at 212-3.

Over the course of her employment at BCCC, Immordino was repeatedly subjected to disciplinary action, usually for exceeding her days of sick leave, but also for other violations, such as tardiness, and tampering with a time card. Defendants' Exhibits 5-62. On two occasions, one in 2007 and the other in 2008, BCCC terminated Immordino's employment. Defendants' Exhibits 38, 43 and 44. On each occasion, her employment was reinstated following grievance. Defendants' Exhibits 46-53 (regarding 2008). Immordino has pointed out, however, that she was not subject to any disciplinary action between September, 2010, and May, 2012.

On May 31, 2012, Immordino was asked by Mark Grisi, Executive Director of the Physical Plant, whom she describes in her motion as "the highest person in charge of maintenance and custodians", to leave a grievance hearing in which she was acting as a shop steward. See Defendants' Exhibit 68. One unnamed person present told the Human Resources director that Immordino had been "acting like a 'raving maniac'" and shouting. Id. Following this, Immordino was suspended without pay pending review by the Office of Human Resources. Id.

According to Immordino, this case hinges on the fact that, on June 6, 2012, while on suspension, she filed a charge with the Equal Opportunity Commission, asserting that she had been discriminated against on the basis of her gender in that male shop stewards were not suspended for raising their voices during grievance proceedings. Complaint at ¶ 22, Immordino Deposition, attached to Response as Exhibit FF, at 248-9. She also asserted that BCCC discriminated against her on the basis of its perception of her as having a mental health condition. Complaint at ¶ 22.

On June 11, 2012, Immordino's suspension was rescinded, and she was awarded pay for most of the days that she did not work. Immordino's Exhibit G. The BCCC Human Relations office found that Immordino's behavior at the grievance proceeding had been inappropriate, but that, because it occurred while she was acting as a union steward, it was not a basis for suspension. Id.

Immordino alleges that, despite the rescission of the discipline, her filing of an EEOC charge motivated Grisi to develop with Tracey Donaldson of Human Relations a "strategy of retaliation and pretextual discipline to terminate" her. Response at 11. As evidence, she points to a June 19, 2012, e-mail exchange between the two. E-mail between Grisi and Donaldson, attached to Response as Exhibit K.

According to Immordino, after her return to work on June 8, 2012, she was, in fact, subjected to pretextual discipline. For example, on July 10, 2012, she was given a Disciplinary Report stating she had been late more than twelve times in a six-month period. Disciplinary Report, attached to Response as Exhibit M. No other person was disciplined for this offense, despite – Immordino claims – an admission by Grisi that others presented the same problem with chronic tardiness. Response at 15, citing Exhibit D at 91-95. Other instances of discipline were instigated by supervisors other than Grisi, but Immordino argues that she knew Grisi would direct discipline in certain cases even though he did not sign the reports. Immordino's Exhibit FF at 310-11.

On December 28, 2012, Gary Ryan, one of Immordino's supervisors, reported to Grisi by e-mail that he had entered a classroom within Immordino's assigned cleaning area, and found her reclining in a chair at a time when she was not scheduled to be on break. E-mail, attached to Motion at Exhibit 109. Ryan reported that he could not "say for sure she was sleeping." Id. He

also reported seeing her later that morning outside of her assigned cleaning area.  Id.  This resulted in the issuance of a Discipline Report ordering a five-day suspension for Immordino for being "out of her area" and "reclining back in [an] office chair" on a time not her break time.  Immordino's Exhibit S.

Later that day, Ryan informed Grisi that, when he issued Immordino's suspension to her, in the presence of two other individuals, David Gay and Kim Brymer, she "volunteered that she was asleep at that time for all the room to hear."  Immordino's Exhibit T.  Grisi testified at his deposition that, upon hearing that Immordino admitted to sleeping, he decided that she would be fired, because "sleeping on the job is immediate termination" under BCCC's contract with the union.   Immordino's Exhibit D at 147, and see Defendants' Exhibit 119.

On December 31, 2012, David Gay told Grisi that Immordino was "joking", or, as Immordino now describes it, speaking in a sarcastic manner, when she said she had been sleeping.  Grisi Deposition, Immordino's Exhibit D at 149-154.  Grisi testified that he did not credit Gay's statement.  Id. at 150.  On or about January 10, 2013, BCCC terminated Immordino.  Interrogatories, attached to Response as Exhibit C, at Response to Interrogatory No. 2.  Following a grievance procedure, the termination was upheld by BCCC's Vice President of Administrative Affairs, and its President.  Defendants' Exhibits 116 and 117.

After her termination, Immordino filed a second EEOC charge, at the same time dual filing with the Pennsylvania Human Relations Commission.  Defendants' Exhibit 118.  In it, she alleged retaliation, discrimination on the basis of sex and perceived disability, and a hostile work environment.  Id.  (The first EEOC charge had been dismissed on December 14, 2012, because of Immordino's failure to follow up on it by providing additional information or a signed charge;

Defendants' Exhibit A). After exhausting her administrative remedies, Immordino filed the present action.

II.     Summary Judgment Standard

Summary judgment is warranted where the pleadings and discovery, as well as any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pr. 56. The moving party has the burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In response, the non-moving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, supra at 325; Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).

In deciding a motion for summary judgment, the court must determine the relevant set of facts and draw all inferences in favor of the nonmoving party to the extent supportable by the record. Scott v. Harris, 550 U.S. 372 (2007). Nevertheless, Rule 56 "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra, at 323.

III.    Discussion

A.      Retaliation

Title VII precludes an employer from discriminating against an employee for making a charge that the employer has engaged in an unlawful employment practice, as defined under Title VII. 42 USC § 2000e-3(a). To set forth a *prima facie* case of retaliation under Title VII, a plaintiff must show that (1) she engaged in activity protected by Title VII; (2) the employer took

an adverse employment action against her; and (3) there existed a causal connection between the participation in the protected activity and the adverse employment action.  <u>Moore v. City of Philadelphia</u>, 461 F.3d 331, 340-341 (3d Cir. 2006).

If the plaintiff establishes a *prim facie* case of retaliation, the burden then shifts to the employer to advance a legitimate, non-retaliatory reason for its conduct, as set forth in <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973).  <u>Moore</u>, <u>supra</u>, at 342.  If the employer is able to do so, the plaintiff can survive summary judgment only by producing some evidence from which a jury could reasonably conclude that the employer's proffered explanation was false, and that retaliation was the actual reason for the adverse employment action.  <u>Moore</u>, <u>supra</u>, <u>citing</u>   <u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d Cir. 1994).

BCCC concedes that Immordino can show the first two elements of a *prima facie* case, but argues that she cannot meet the third element, because she will not be able to show a causal link between the filing of her EEOC/PHRC complaint and her termination.  On the contrary, I conclude that, although it will be for the jury to decide whether retaliation was the actual reason for Immordino's termination, she has come forward with evidence from which a jury could reasonably reach such a conclusion.

A causal connection can be shown by a "broad array of evidence," including a suggestive temporal proximity between the protected activity and the allegedly retaliatory action, a pattern of antagonism coupled with timing, differential treatment of other employees, and other forms of circumstantial evidence.  <u>Farrell v. Planters Lifesavers Company</u>, 206 F.3d 271, 281, 283 (3d Cir. 2000).

Without entering into every detail of Immordino's case, it is sufficient to state that she has provided evidence in support of a showing of suggestive timing in the context of a pattern of

antagonism.  On June 6, 2012, Immordino's EEOC charge was filed.  On June 18 and 19, 2012, Grisi entered an e-mail exchange with Tracy Donaldson of Human Relations which, while capable of other interpretations, could be read as showing that they decided to terminate Immordino as soon as possible.

In this exchange, Donaldson advised Grisi:  "Get [Immordino's] supervisor to demand the improvement [in Immordino's behaviors] and use the disciplinary procedures that are available to us within the contract."  Immordino's Exhibit K.  Grisi then asked whether he could have Immordino tested for drugs and alcohol.  Id.  (There is no evidence suggesting that drug or alcohol use has ever been an issue in Immordino's employment).  Donaldson informed Grisi that this would require "reasonable suspicion", and advised:  "I understand that Felice sleeps on her shift, in the classrooms; perhaps Terrie could observe, get another person (per the policy) to observe and gauge her reaction when woken up.  If she appeared to two observers [to] be under the influence, that'd qualify as 'reasonable suspicion.'"  Id.

Interpreting these facts in the light most favorable to Immordino, as a judge must in considering a motion for summary judgment, it could be considered suggestive timing that Immordino was subjected to discipline for being outside of her work station on June 20, 2012, two days after the foregoing e-mail exchange.  Immordino's Exhibit L.  She was disciplined thereafter on July 10, August 7, August 21, and December 12, 2012.  Immordino's Exhibits M, O, P and Q.

BCCC also argues that, even if Immordino has shown a *prima facie* case of retaliation, she will not be able to show a jury that its purported reason for terminating her was pretextual.  As above, BCCC  maintains that sleeping during work hours is an offense rendering an employee subject to immediate termination.  In response, Immordino has pointed to a comparator, Robert

Blalock, who was not terminated for sleeping on the job, although his behavior was witnesses by Grisi.  Immordino's Exhibit D at 185-187.  Grisi testified that he issued Blalock a warning, as opposed to terminating his employment, in part because Blalock had no other disciplinary record.  Id. at 186-7.  Immordino, however, has provided evidence that Blalock was disciplined in 2012 alone for numerous incidents, including a prior incident of sleeping on the job, insubordination, "sitting around" during work hours, and theft of a tape measure.  Immordino's exhibits DD, EE and JJ.

What is more, it is undisputed that BCCC relied only on Immordino's own admission to prove that she had been sleeping on December 28, 2012.  Immordino, however, contests the fact of that admission.

As a whole, it cannot be said that Immordino has failed to meet her burden of coming forward with evidence sufficient to avoid summary judgment at each stage of the McDonnell Douglas analysis where she bears the burden of proof.  Consequently, BCCC is not entitled to summary judgment on Immordino's claim of retaliation.

B.     Hostile Work Environment

BCCC argues that Immordino has not provided evidence which would support a claim that she was subjected to a hostile work environment based on her sex.  Immordino has dropped this claim, and has responded that she is pursuing only a claim that she was subject to a hostile work environment as a result of her protected action – in this case, the filing of her EEOC charge.

In Jensen v. Potter, the Court of Appeals for the Third Circuit recognized a cause of action for retaliatory harassment.  435 F.3d 444, 449 (3d Cir. 2006).  It wrote that the elements of such an action were that (1) the plaintiff suffered intentional discrimination because of her

protected activity; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present.  Id.  See also Petrulio v. Teleflex, Civ. A. No. 12-7187, 2014 WL 5697309 (E.D. Pa. Nov. 5, 2014).

      As to the fifth element, the Honorable Jan DuBois explained in Petrulio:

> An employer's liability for harassment depends, in part, on the status of the alleged harasser. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998).  An employer is strictly liable if the alleged harasser is "a supervisor with immediate (or successively higher) authority over the employee" and the harassment results in a "tangible employment action." Id.  A tangible employment action occurs when there is "a significant change in employment status, such as discharge, demotion, or undesirable reassignment." Id.  "When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damage, … [which] comprises two necessary elements:  (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id.

2014 WL 5697309 at *11.

      As discussed above, Immordino has made a *prima facie* showing that Defendants engaged in a heightened level of observation and criticism of her behavior because of her having filed an EEOC complaint.  She further alleges that she was yelled at and scrutinized daily during the period between the filing of her complaint and her termination.  Defendants complain that, in this latter regard, Immordino relies primarily upon her own testimony.  However, Immordino's testimony does constitute relevant evidence, since she was obviously a witness to her own treatment.

      Immordino has, therefore, come forth with enough evidence to warrant placing her claim of a hostile work environment before a jury.  It will be for the jury to decide whether the examples of alleged mistreatment which Immordino cites are ultimately, as the Defendants have argued, paltry and unconvincing.  Equally, to the extent that Immordino intends to proceed upon

a theory of a hostile work environment with no tangible employment action (which is not clear from the summary judgment submissions, standing alone), it will be for the jury to determine the validity of such a "Farragher/Ellerth" defense as Defendants may put forward.

IV.   Conclusion

For the reasons set forth above, I will enter an Order of even date denying Defendants' Motion for Summary Judgment.

BY THE COURT

/s/Jacob P. Hart
_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE