IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FELICE IMMORDINO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BUCKS COUNTY COMMUNITY | : | |
| COLLEGE | : | NO. 14-1736 |

OPINION

JACOB P. HART                                                                                    DATE: 3/18/2015
UNITED STATES MAGISTRATE JUDGE

      Following a jury trial held before the undersigned, Felice Immordino obtained a verdict of $83,000.00 in her employment discrimination case. Her attorneys have now filed a petition under 42 USC § 1988(b) seeking a fee award in the amount of $172,005.05. Defendant, Bucks County Community College ("BCCC"), has opposed the petition, asking that the fee be reduced by 50% to reflect Immordino's partial success in the case, and also seeking other reductions to account for excessive, redundant, or otherwise unnecessary work.

      As explained below, I will enter judgment in favor of Immordino in the amount of $218,880.05, representing the $83,000.00 jury award, and attorney's fees of $135,880.05, as explained below.

I.      Factual Background

      On March 24, 2014, Immordino, who worked as a custodian for BCCC, sued both her employer and her immediate supervision, Mark Grisi, in connection with her treatment at BCCC and her eventual termination. She alleged under Title VII of the Civil Rights Act ("Title VII"), 42 USC §§ 2000d *et seq.* that she had been terminated on the basis of her gender, and/or in retaliation for complaints of gender discrimination, and that she had been subjected to a hostile work environment on the basis of her gender and/or in retaliation for complaints of gender

discrimination.  Complaint at ¶¶ 29-31.  Immordino also asserted that her termination constituted discrimination and retaliation under the Americans with Disabilities Act ("ADA"), on the basis that BCCC perceived her as suffering from mental illness.  Id. at ¶¶ 32-34.  She added identical claims under the Pennsylvania Human Relations Act ("PHRA").

BCCC defended, in part, by claiming that Immordino's termination was the result of her behavior over the entire ten years of her employment.  Partly as a consequence of the long period of time under scrutiny, there was a great deal of document discovery in this case.  Further, twelve depositions were taken.  Immordino filed nine motions in limine.  Documents docketed as 30-32, and 39-44.  Defendants filed six.  Documents docketed as 33-38.

As trial approached, Immordino modified the nature of her claims.  On December 8, 2014, one month before the commencement of trial, Defendants filed a motion for summary judgment seeking dismissal of Immordino's entire case.  Motion for Summary Judgment, docketed as Document 24.  Two days later, Immordino voluntarily dismissed her claims under the ADA, and the PHRA claim pertaining to the perception of disability.  Stipulation of Dismissal, docketed as Document 25.  On December 22, 2014, Immordino filed a response to the motion for summary judgment.  Response, docketed as Document 26.  In it, she stated that she was not pursuing a claim for hostile work environment on the basis of her termination, but, rather, was asserting no tangible employment action, and only for the period between June, 2012, when she filed the EEOC complaint, and her termination in December, 2012.  Response, docketed as Document No. 40, at 31.

On December 29, 2014, Immordino advised Defendants that she would not pursue her claims for gender discrimination or hostile work environment based on gender, either under Title VII or under the PHRA.  Reply, docketed as Document 47 at 1.

Thus, when the case went to trial on January 9, 2015, it involved only a claim of retaliatory dismissal for complaining of gender discrimination (more specifically, for having filed an EEOC complaint alleging gender discrimination), and a claim that Immordino had been subjected to a hostile work environment, with no tangible employment act, because of her complaints of gender discrimination. At the close of evidence, Immordino dismissed all claims against the individual defendant, Mark Grisi. Stipulation of Dismissal, docketed as Document 86.

On January 20, 2015, the jury entered a verdict in favor of Immordino on her claim of wrongful termination against BCCC, assessing damages of $83,000.00. It found against her on her claim of a hostile work environment.

II.     Legal Standards

The starting point for determining attorneys' fees is the number of hours expended multiplied by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). This calculation results in the "lodestar," which is presumptively correct, but which may be adjusted should the court find such adjustment appropriate. Rode v. Dellarciprete, 892 F.3d 1177, 1183 (3d Cir. 1990). In making fee requests, Plaintiff's counsel have the burden of showing that their request is proper and supported by the evidence. Rode, supra.

In addition, the number of hours set forth by the party requesting fees must be reasonable. Id. In calculating the number of hours expended, the court will exclude excessive, redundant or unnecessary hours as not reasonably expended, as well as those hours not adequately documented by the requesting party. Id.

Thus, the calculation of a reasonable number of hours by a reasonable rate does not end the inquiry:

> There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the "results obtained." This factor is particularly crucial where the plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief. In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

Hensley, supra, at 461 U.S. 434.

Pursuant to this inquiry, the court can reduce the hours claimed by the number of hours spent litigating unsuccessful claims which were distinct in terms of facts and legal theories from the claims on which the party did succeed. Rode, supra, at 892 F.2d at 1183. However, in other cases where all the claims involve a common core of facts and/or related legal theories:

> much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

Id. at 435.

IV.     Discussion

A.      The Lodestar

BCCC has not questioned the hourly rate charged by the attorneys who worked on this case. It does, however, seek a reduction in compensable fees based on the argument that much of the legal work performed pertained to issues other than the one claim upon which Immordino was successful at trial. BCCC's specific objections are addressed below.

1.	<u>Discovery In General</u>

It is evident that Immordino's counsel took a wide-bore approach to discovery in this case. This approach is justifiable to some extent, to ensure that the full facts of a case are known, and the appropriate claims alleged. Nevertheless, it was notable in this case that big chunks of Immordino's causes of action kept falling away in the month between summary judgment and trial.

Immordino argues that the discovery and evidence necessary was identical for all of her claims, so that a reduction in compensable hours would be inappropriate, as suggested in <u>Brown v. Nutrition Management Services</u>, 370 Fed. Appx. 267, 272-3 (3d Cir. Mar. 17, 2010). However, BCCC has demonstrated that this is not entirely true. A great number of Immordino's document requests, interrogatories, and deposition questions pertained specifically to the ADA and gender discrimination claims she voluntarily dismissed before trial, and had no connection to the retaliation claims. <u>See</u> Exhibits 2-10. This is not, therefore, one of those cases which it is impossible to view as a series of discrete claims, in the words of <u>Hensley</u>. I conclude, therefore, that a reduction of the fee claim is warranted.

BCCC has directed the court's attention to certain dates on the billing sheets for Immordino's attorneys, but has not provided a monetary estimate of the total of hours (or dollars) billed for work not connected to the retaliation claims. I will, therefore, reduce the overall amount of the fee request by 20%, or $34,000.00.

The reduction in hours is smaller as a percentage of the total hours billed than the percentage of unsuccessful claims was to the total number of claims,[1] because there was a degree of overlap between the matters explored.  For example, interactions between Immordino and Grisi which took place before Immordino filed her EEOC complaint were not strictly relevant to her retaliation claims, but had to be explored because of the Defendants' claim that Immordino was fired because of her behavior during the course of her ten-year employment.  Also, Immordino's counsel specified in their petition that they have already deducted the hours spent reviewing medical records for the ADA claims.

2.The Robinson and Tracchi Depositions

In addition to the 20% reduction discussed above, I will also reduce the fee award in the amount billed by attorney Richard Albanese for preparing for and defending the depositions of Robert Robinson, and Sean Tracchi.  It is clear from the descriptions of these witnesses in Immordino's Pre-trial submission that Tracchi and Robinson were expected to testify primarily in support of Immordino's claim of gender discrimination.  Pre-Trial Stipulation, docketed as Document No. 46, at Exhibit C.  In fact, neither witness appeared at trial, which demonstrates that their testimony was not relevant to the retaliation claims.

BCCC has suggested that Harry Lingerman, Harry Krier and Terrie Lowery also fit into this category.  However, Harry Lingerman was Immordino's union representative regarding the accusation of sleeping on the job which directly led to Immordino's termination.  He would certainly have been deposed regardless of the nature of the claims brought.  Indeed, unlike Robinson and Tracchi, he testified at trial.

---

[1] BCCC suggests that Immordino's complaint actually set forth 13 separate claims, of which two pertained to the retaliatory termination claim she prevailed upon at trial.  Defendant's Memorandum in Opposition to Plaintiff's Petition for Attorney Fees at 2.  Alternatively, Immordino's original claims could be seen as falling into three categories; gender discrimination, disability discrimination, and retaliation.  Even under this kinder approach, however, Immordino would be seen as having prevailed on only one sixth of her claims.

Similarly, Krier and Lowery testified at trial. Krier, Immordino's direct supervisor, and Lowery, the director of BCCC's custodial services, would inevitably have been deposed. The transcript of Krier's deposition shows that he was questioned extensively on discipline Immordino had received over the years of her employment, including the period between the filing of her EEOC complaint and her termination. BCCC's Response at Exhibits 5 and 5A. With respect to the Robinson and Tracchi depositions, I have reduced the fee award by $875. Certain billing entries combined work on Lingerman's deposition with time spent on Robinson's or Tracchi's depositions; in those cases, the amount has been halved.

3. <u>Time Billed During Jury Deliberations</u>

BCCC contends that it is unreasonable to charge for two attorneys, both waiting for seven hours in the courtroom during jury deliberations. As BCCC has pointed out, courts have scrutinized this expense. In <u>Elston v. UPMC-Presbyterian Shadyside</u>, Civ. A. No. 2:06-329, 2008 WL 2412945 at *6 (W.D. Pa. June 10, 2008), for example, fees were granted only for the two hours a plaintiff's attorney spent responding to two jury questions, and denied for the ten hours spent simply waiting for the verdict.

Immordino has pointed to <u>McGuffey v. Brink's, Inc.</u>, 598 F. Supp.2d 659, 671 (E.D. Pa. 2009), where fees were granted for time spent waiting for a jury verdict. That case, however, does not involve billing for a second attorney. Another case, cited by Immordino, <u>Buffington v. PEC Management II, LLP</u>, Civ. A. No. 1:11-229, 2014 WL 670854 at *10 (W.D. Pa. Feb. 20, 2014) concerned the uses of a second attorney at trial as a whole, and did not concern a dispute about a charge for waiting during jury deliberations.

While Immordino argues convincingly that it is useful to have an attorney in the courtroom during jury deliberations in case legal issues arise, it is less clear that two attorneys

7

are necessary. Although the lawyers who tried this case were only fourth year associates, their excellent performance in the courtroom demonstrated that either one of them was competent to handle any issues on her own. I will therefore reduce the total fee award by $1,250.00, as BCCC has suggested.

4. <u>Motion Practice</u>

BCCC argues that the legal work performed in opposing the Defendants' Motion for Summary Judgment should be reduced because much of it pertained to claims other than the one which was successful at trial. However, Immordino's 30-page response was not excessively long for an opposition to a terminal motion. She had already dropped the ADA cases, and did not address them in her response. Moreover, it was in her response to the summary judgment motion that Immordino stated that she would only be pursuing a hostile work environment claim based upon retaliation, and not upon gender. Response at 31. She spent only about one and half pages supporting the claim that she was terminated due to gender discrimination <u>Id</u>. at 32-33.

Therefore, although counsel for Immordino must have spent some time in deciding which causes of action to drop, they spent little time defending claims which they ultimately decided not to pursue. I find no reduction in fees is necessary.

BCCC also argues that the amount billed for responding to the summary judgment motion should be reduced because the response was prepared by name partner Ari R. Karpf, billing at a relatively high rate. In their reply, counsel responds that this happened because of the time pressures involved in a small firm preparing pre-trial submissions and coping with numerous motions in limine at the same time it responded to the motion. In any event, summary judgment is a crucial stage in a case, since it could result in the dismissal of the entire action. It is well within the range of professional judgment to have a senior partner prepare the response,

especially since the two attorneys with primarily responsibility for the case were fourth-year associates. Other work performed by Mr. Karpf on this case was minimal.

Nor do I conclude that a reduction in fees is necessary with regard to the motions in limine. Several of Immordino's motions did not pertain to any specific claim in this case, i.e., those seeking to suppress evidence regarding a decades-old DUI charge; a separation from a different job; and earnings from unemployment compensation. Motions docketed as Documents 31, 32 and 39. None pertained to a claim not pursued at trial.

5.  Other Specific Reductions Sought By BCCC

BCCC has asked for two other reductions in the fee award to account for work called excessive, redundant, or unnecessary. See McKenna v. City of Philadelphia, 582 F.3d 447, 455 (3d Cir. 2009). Specifically, it claims that some work performed by the attorneys could have been performed by paralegals, and that charges for time spent preparing jury instructions for claims not presented at trial should be eliminated.

As to the first claim, BCCC complains that attorneys billed for printing documents, searching the internet for information, and gathering exhibits. As BCCC reports, however, that the billing for these tasks is block-billed with other activities. Moreover, the total amount of time spent on these tasks was small – BCCC can only state that it could have been "as much as" ten hours over the course of the litigation. It appears, therefore, that it represents a very moderate amount of arguably paralegal-suitable activity undertaken as part of the course in performing attorney work. It does not warrant a further reduction in the fee award.

Time spent preparing jury instructions for claims that were dropped is accommodated in the 20% reduction in the fee award described above. There is no need for any further reduction.

B.     Success At Trial

As noted above, the United States Supreme Court has specified that, aside from specific reductions to the lodestar amount, a fee award may also be modified to take into account the results obtained at trial, which it called an important, or even crucial factor, where the prevailing party succeeded on less than all of her claims.  Hensley, supra, at 461 U.S. 434.  BCCC asks that Immordino's fee award be cut in half to reflect the fact that she prevailed on only one of the two claims to reach the jury.

However, it is not equitable to divide the fee in half simply because Immordino prevailed on half of her claims.  As emphasized in Hensley, it is the result which matters.  Id. at 435.  This has been interpreted to require a focus on the monetary and other relief obtained.  Brown v. Nutrition Management Services Co., supra, 370 Fed. Appx. at 273.

In this case, the monetary recovery to Immordino of $83,000.00 was lower than her last pre-trial demand of $120,000.00.  Nevertheless, it was higher than BCCC's offer of $60,000.00.  Considering the fact that, as all parties were aware, Immordino would obtain a separate fee award if she obtained a jury verdict, whereas attorney fees would be subtracted from a settlement amount, it is clear that the outcome favored Immordino.  She has pointed out that if she had been able to settle the case for $120,000, the final amount to reach her pocket after subtracting a 1/3 attorney's fee would have been very close to the amount she obtained at trial.  This case, therefore, is unlike Brown, where fees were cut partly as a result of the great difference of the amount of damages sought and the amount obtained.

Moreover, Immordino's failure to obtain a verdict on her claim for a retaliatory hostile work environment did not remove any particular source of damages from the jury's consideration.  In other words, even if Immordino had prevailed on both claims, the jury still

10

would have considered front pay, back pay, compensatory damages, and nothing more. Accordingly, it is by no means clear that her failure on one of her two claims had any effect at all on the recovery she obtained. Possibly, she might have obtained more compensatory damages if she had been found to have been subjected to a hostile work environment, but this is very speculative.

In determining an appropriate lodestar figure, the focus was on the amount of work done by Immordino's counsel on claims which were voluntarily dropped, and on the claim which was unsuccessful at trial. In the absence of a more precise figure, I estimated the appropriate figure to be 20% less than requested. Here, however, the focus is on Immordino's monetary recovery as weighed against the anticipated recovery. For the reasons discussed above, no across-the-board reduction in the fee award is appropriate based on the outcome at trial.

                                                  BY THE COURT

                                                  /s/Jacob P. Hart
                                            _____
                                            JACOB P. HART
                                            UNITED STATES MAGISTRATE JUDGE